COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Elder and Senior Judge Cole
Argued at Richmond, Virginia


ANDREW LEWIS ADAMS

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1884-95-2        CHIEF JUDGE NORMAN K. MOON
                                         AUGUST 27, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       James B. Wilkinson, Judge

            Patricia P. Nagel, Assistant Public Defender
            (David J. Johnson, Public Defender; Office of
            the Public Defender, on brief), for
            appellant.

            John K. Byrum, Jr., Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


     Andrew Lewis Adams appeals from his conviction of conspiracy

to distribute cocaine in violation of Virginia Code § 18.2-256.

He argues that the evidence was insufficient to prove the

existence of an agreement to distribute cocaine between him and

codefendant.  We disagree and affirm the conviction.

     On March 30, 1995, Officers Eric S. Lee and Leigh Ashtiani

were assigned to an undercover controlled-buy operation in the

City of Richmond.  While driving down Southlawn Boulevard in an

unmarked police vehicle they encountered appellant and

codefendant, a female later identified as Yvette Liles.  As the

officers drove by, appellant motioned for the officers to pull

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

over.  After the officers stopped, appellant approached the vehicle and engaged in a conversation with Lee, the driver, through the open passenger side window.  At trial, Lee related the conversation as follows:

> The first thing I said once he [appellant] got to the vehicle was, yo, what's up.  At that point, he [appellant] came over and said what's up man?  I said I am looking.  He [appellant] then said, in a rather distinct voice, what are you looking for?  I said I need something to set me off.  He [appellant] said what?  I then said a rock.  He [appellant] said how much man?  And I told him all I can do is a twenty.

At that point, appellant turned to codefendant who was standing on the sidewalk and told codefendant to come over to the car.  Codefendant did so, at which point the appellant asked if he and the codefendant could get into the car.  Officer Lee declined and told appellant that he had the money "right here."  Officer Lee then handed the money to Officer Ashtiani who then passed the money to codefendant.  Codefendant then reached into her pocket and passed drugs to Ashtiani.  Appellant and codefendant then walked away together and were arrested together shortly thereafter.

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  The judgment of the trial court is presumed correct, Daley v. Commonwealth, 132 Va. 621, 111 S.E. 111 (1922), and in a

circumstantial case, the inferences drawn by the fact finder will not be disturbed on appeal as long as they are reasonable and justified. O'Brien v. Commonwealth, 218 Va. 1045, 1049, 243 S.E.2d 231, 233 (1978).

"Conspiracy is defined as `an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1992)). "There can be no conspiracy without an agreement, and the Commonwealth must prove beyond a reasonable doubt that an agreement existed." Id. (quoting Floyd v. Commonwealth, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978)). However, "[p]roof of an explicit agreement is not required and oftentimes the prosecution must rely only on circumstantial evidence to establish the conspiracy." Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992).

In Feigley, we addressed the question of when a multi-party drug sale would give rise to an agreement to distribute, and therein held that

> the agreement must be that two or more persons will act in concert to commit a crime . . . if two or more people agree in advance to act in concert to sell drugs, where one serves as the "supplier" and the other as the "runner," an agreement to distribute drugs exists and a conspiracy has been proven. It is proof of the second element, the agreement to distribute, that "establishes the necessary preconcert and connivance" necessary to prove a conspiracy.

16 Va. App. at 722-23, 432 S.E.2d at 524 (quoting Zuniga v.

- 3 -

Commonwealth, 7 Va. App. 523, 529, 375 S.E.2d 381, 385 (1988)).

Here, the record indicates that appellant and codefendant had reached an agreement and conspired to distribute drugs. Trial testimony creates an inference that appellant and codefendant operated as a team, wherein the appellant flagged down the vehicle, made inquiries, and having determined the kind and quantity of drug desired, motioned codefendant to approach and complete the transaction. The evidence presented at trial makes certain that appellant realized the nature of the activity. It was appellant, not codefendant, that solicited the sale and inquired as to what substance was sought. Likewise, appellant ascertained the amount to be spent. Codefendant then, on cue, completed the transaction in progress. Such activity is sufficient to demonstrate the preconcert and connivance necessary to prove a conspiracy.

The facts here are distinguishable from those in Feigley, 16 Va. App. 717, 432 S.E.2d 520, upon which appellant relies, where we considered a multi-party drug deal involving an undercover police officer, defendant and three other individuals. We found that there was no evidence to prove Feigley and another had prearranged that they would distribute drugs or that another would run drugs for Feigley.

Unlike Feigley, the record in this case contains facts sufficient to justify the trial court's decision that an agreement existed. Here, unlike in Feigley, the appellant was not contacted after the sale was initiated and then asked to

- 4 -

supply the drugs, thereby leaving it undecided on the record as to whether there had been a prior agreement to distribute drugs. Instead, here the evidence presented establishes concerted actions of appellant and codefendant sufficient to prove an agreement.  Appellant initiated and established the terms of the deal while codefendant awaited her cue to enter and complete the sale.  When appellant made the initial contact he asked if he <u>and</u> codefendant could get into the car to complete the transaction. Both were present for the duration of the transaction and each performed in accordance with a reasonably inferred plan or system of operation.

Finding sufficient evidence of an agreement between appellant and codefendant to distribute cocaine, we affirm.

<u>Affirmed</u>.